OPINION OF THE COURT
Lewis L. Douglass, J.
This is a motion by the People for an order allowing the People to introduce expert testimony on the psychological response of rape victims known as “Rape Trauma Syndrome.”
This case arises out of an alleged rape of an 11-year-old girl. The complainant and defendant, age 38, are neighbors in the same apartment building. Complainant lives with her family. Defendant shares an apartment with his girlfriend. The complainant would often visit the defendant’s apartment to babysit or play with the girlfriend’s children. It is alleged that on one of these visits, while the girlfriend was not home, the defendant raped the complainant. The complainant did not immediately report the incident. Two months later, the defendant allegedly kissed the girl on the mouth while fondling her breasts and buttocks. The complainant then reported both incidents to her mother. The girl was taken to the hospital, and an examination revealed that her hymen was torn. While the case was awaiting *1085 trial, the complainant wrote letters to the defendant recanting the incidents.
The People contend that defendant will attempt to impeach the complainant through these letters. To refute that attempt the People seek permission, in this pretrial application, to call an expert who will describe to the jury the symptoms of rape trauma syndrome and testify that in her opinion the complainant suffers from rape trauma syndrome, and that one of the symptoms of that trauma, due to the feelings of guilt and apprehension about the trial, is to make false recantations in an effort to avoid public embarrassment.
The defendant objects to the introduction of this expert testimony on the ground that:
(1) Rape trauma syndrome has not been sufficiently recognized in the scientific community to be accepted as a reliable scientific body of knowledge.
(2) Such testimony invades the traditional province of the jury since the testimony bears directly on the issue of the victim’s credibility.
(3) The distress and emotional upset that rape victims undergo is not such a unique phenomenon that people of ordinary intelligence and experience may not analyze those reactions in deciding whether the victim is telling the truth.
Expert testimony is admissible where the conclusion to be drawn by the jury is dependent on facts not within the common knowledge of people of ordinary intelligence, but rather, is dependent on facts contained within a body of knowledge recognized by the scientific or professional community (Richardson, Evidence [10th ed], § 367).
The term “rape trauma syndrome” was first introduced into the scientific literature in 1974, in an article in the American Journal of Psychiatry entitled Rape Trauma Syndrome, by Burgess and Holmstrum, and is used to describe the rape victim’s unique response to the violence of rape which is different from the response of those who experience other forms of violent attacks. Since that term first appeared, the reaction of rape victims has been the *1086 subject of numerous scientific research efforts (see, e.g., Calhoun, Victim Emotional Response: Effects on Social Reaction to Victims of Rape, 20 British Journal of Social Psychology, at p 17; Williams and Holmes, The Second Assault, at pp 82-86; Special Features: Assessment and Treatment of Rape Victims, 36 The Clinical Psychologist, 88; Ferris, Long Term Consequences of Adult Rape, Response, A Publication of the Center for Women’s Policy Studies [Jan.-Feb., 1983, at pp 5-6]; also see State v Marks, 231 Kan 645, citing other scientific studies).[1]
These studies do not suggest that all rape victims react the same way, but rather that because of the feelings of shame or guilt or fear of public embarrassment, the reaction of the rape victim is unique and different from the reaction to other forms of violent assault. Since the reaction to rape is unique and so complex as to warrant scientific investigation, it follows that an understanding of those reactions is not within the common understanding or experience of persons of ordinary intelligence and experience who may be expected to sit on a jury. That logical conclusion, that people do not understand either the cause or reaction to rape, is universally confirmed in scientific studies in this area (see, e.g., Burt, Cultural Myths and Supports for Rape, 38 Journal of Personality and Social Psychology, at pp 217, 229).
Since rape and the victim’s reaction are not within the common knowledge of jurors, and since the subject is pervaded by myth, emotion and prejudice, virtually every reported case has approved the admission into evidence of expert testimony to describe the psychological response to rape (Division of Corrections v Wynn, 438 So 2d 446 [Fla]; State v Harwood, 45 Ore App 931; State v Kim, 64 Hawaii 598; State v Lebrun, 37 Ore App 411; State v Marks, 231 *1087 Kan 645, supra; State v Middleton, 294 Ore 427; People v Bledsoe, 140 Cal App 3d 267).[2]
Two reported cases, both in the State of Minnesota, rejected the admissibility of this form of evidence (State v Saldana, 324 NW2d 227; State v McGee, 324 NW2d 232). But that court nevertheless agrees, in Saldana, that if the victim were a child, such expert testimony would be admitted.
Though there are no reported cases on this question in New York, in analogous situations New York courts have found such expert testimony admissible. In People v Henson (33 NY2d 63), the court stated that the battered child syndrome is a medical diagnosis indicating that a child did not receive certain injuries accidentally; that such expert testimony was relevant and properly received in evidence.
In People v Fisher (73 AD2d 886, affd 53 NY2d 907, 909), the Court of Appeals held admissible expert testimony of a psychiatrist to testify “as to the phenomenon of ‘repression’ ”. In Fisher, the witness, who was defendant’s lover for approximately four years, failed to promptly identify him as the killer. A psychiatrist was called by the People to establish that the witness’ “inability to make an immediate identification of defendant * * * was consistent with the psychological phenomenon of‘repression’ or ‘blockage’ ” (73 AD2d 886, 887, supra). The court stated that the doctor’s “testimony was helpful in explaining an arcane subject, not otherwise readily [comprehended] to a jury of lay persons” (pp 887-888).
The admission of this expert testimony is no more inflammatory, nor more intrusive into the province of the jury than other expert testimony, assuming adequate and proper instructions are provided to the jury, and, of course, the expert will not be permitted to testify as to whether she believes the witness (People v Parks, 41 NY2d 36; People v Ciaccio, 47 NY2d 431), but rather, will be permitted to explain rape trauma syndrome to the jury and express her opinion that the victim suffers from that syndrome. The *1088 jury will then consider the credibility of the victim’s testimony along with whatever other evidence is submitted on the question of credibility. And needless to say, the defendant is free to call such experts who may express a view different from the view expressed by the expert called by the People.

. In addition to the scientific studies referred to in this opinion, the People also submitted to the court the affidavit of Julie Blackman Doron, the psychologist the People hoped to call as the expert, and affidavits of three other prominent authorities on the subject of rape and its impact on victims, stating that rape and its impact on victims is a specialized and scientifically validated body of knowledge:
Dean G. Kilpatrick, Ph.D., Professor of Clinical Psychology and Director, Laboratory for Study of Violent Behavior, Medical University of South Carolina.
Lois J. Verone, Ph.D., Clinical Psychologist, Medical University of South Carolina. David Finkelhor, Associate Chair, Family Research Laboratory, University of New Hampshire.

. Though not reported, at least two Trial Judges in New York State have admitted expert testimony on the subject of rape trauma syndrome (People v Montgomery, Queens County, index No. 1879/81; People v Wyatt, Suffolk County, index No. 1043/81).