Willie E. WHEAT, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: Jan. 27, 1987.
Decided: June 11, 1987.

David M. Lukoff, Asst. Public Defender, Office of the Public Defender, Wilmington, for defendant below, appellant.

Richard E. Fairbanks, Chief of Appeals, Dept. of Justice, Wilmington, for plaintiff below, appellee.

Before MOORE, WALSH and HOLLAND, Justices.

WALSH, Justice.

The appellant, Willie E. Wheat, was convicted after a bench trial in the Superior Court of first degree rape of his stepdaughter. His appeal raises an important issue of first impression in this jurisdiction: To what extent may the State use expert testimony to assist the trier of fact in evaluating the testimony of child sexual abuse victims? While we approve the use of such expert testimony within the limits set forth in this opinion, we find its use in this case to be reversible error.

## I

On the morning of March 28, 1985, the complainant, Wheat's ten year old stepdaughter, informed her mother, Wheat's second wife, that Wheat had sexually molested her. The complainant's mother related the child's claim to the police. As a result Wheat was arrested and incarcerated.

During Wheat's incarceration, his first wife visited the trailer where the complainant lived with her mother, a stepbrother, and, until his incarceration, Wheat. At a time when the complainant and Wheat's first wife were alone together in the trailer, the complainant recanted her allegations of sexual abuse. There was no indication that Wheat's former wife physically mistreated the complainant or threatened to do so. Subsequently, the complainant repeated her recantation to her mother. In the company of the complainant, Wheat's first wife, and another person, the complainant's mother traveled to the investigating police agency and informed the police of the complainant's recantation.

Shortly thereafter, Wheat's first wife returned to Louisiana. Several days later, the complainant reversed her recantation, informing her mother that Wheat had in fact sexually abused her.

At Wheat's trial, seven months after his arrest, the complainant testified consistently with her original allegations of abuse and the reversal of her recantation. She also testified that after Wheat abused her, he told her that if she told her mother, her mother would tell the State, and that when Wheat "went to jail, he was going to break out and kill me and my mother."

The State and defense counsel offered opposing explanations for the complainant's recantation and reversal. The complainant explained her recantation by stating that Wheat's first wife had scared her

by telling her, at a time when no one else was around to protect her, that she (the complainant) was "playing," and that if she "didn't have [Wheat] out for Easter ... the [other] kids were going to get really mad at me." The complainant's mother corroborated this testimony, stating that the complainant told her the recantation occurred because Wheat's first wife "kept telling her it wouldn't be fair for her daddy to be ... not here for Easter at home." Defense counsel, however, sought to establish that the complainant's mother had prompted the complainant's original allegations of abuse and that the complainant recanted those allegations because she was "tired of lying."

The State sought to introduce expert testimony through Margaret Jackson, a clinical worker in the Intrafamily Sexual Abuse Treatment Program for the Childrens' Bureau of Delaware. Jackson had worked at the Bureau since August, 1984. In 1980 she had obtained a master's degree in clinical work from Louisiana State University. From then until July, 1983, she had been director of a child abuse program in Louisiana and later worked for the United States Congress as a "child abuse expert specialist in research," in which capacity she had testified for the Select Committee for Children in the Family.

Jackson had treated or counseled approximately seventy-five victims of sexual abuse under the age of eighteen, and had been involved in the treatment of the complainant in this case. She had attended national conferences on sexual abuse, at one of which there had been three separate workshops concerning recantation, and had kept abreast of literature in the field by reading professional journals dealing with clinical social work and books dealing with "child sexual assault."

Jackson had previously testified in Delaware Family Court on custody matters, and in Louisiana on custody matters and abuse of adult women. However, she had never before testified in Delaware Superior Court or testified specifically concerning recantation by child molestation victims.

Over defense objection, the trial judge allowed Jackson to testify as an expert in the field of intrafamily sexual abuse, ruling, however, that she could not opine whether the complainant was being truthful or not. Jackson testified that in general, between thirty percent and forty percent of children recant, alter, or otherwise minimize their original allegations of sexual abuse, but that fewer than five percent recant and maintain the altered statement. She stated that of the seventy-five to eighty children whom she had treated or counseled, "about thirty" had recanted at some point, but only three had recanted and maintained their recantations. Basing her testimony on literature in the field, experiences from her own practice and interviews with the complainant, her mother, and others, she described factors that cause such recantations in general,[1] and opined that each of those factors was present in the complainant's case, listing behavior she believed she had observed in the complainant which supported her conclusion.[2] She added that it is "very uncommon" for a victim's initial report to include all instances of abuse or be fully detailed. Finally, in response to a question whether she had learned from the complainant "what actually happened," she related that the complainant had told her of two instances involving oral sex with Wheat and "two or three occasions" on which Wheat had tried to fondle the complainant.

1. Factors described included:
   a. pressure on the complainant by family members, especially through continued contact with the alleged abuser
   b. fear of the legal process
   c. the child's conflicting feelings towards the alleged abuser
   d. a desire to prevent the withdrawal of affection that may accompany allegations of abuse
   e. fear of retribution.

2. Behavior described included:
   a. recurring nightmares
   b. age-regressed behavior
   c. depression
   d. suicidal thoughts.

## II

Appellant's attack on the admissibility of Jackson's testimony is two-pronged. He argues that (a) Jackson's qualifications were insufficient to establish her as an expert, and (b) her qualifications apart, Jackson's testimony impermissibly invaded the credibility province of the trier of fact, especially insofar as it concerned consistency between the complainant's behavior and behavior indicative of what we will term the "child sexual abuse syndrome." For its part, the State maintains that Jackson's qualifications were sufficient and her testimony admissible under the broad standard imparted by section 702 of the Delaware Rules of Evidence.[3]

■ We find no merit in the claim of lack of expertise. Although the subject of expert analysis and testimony in child sexual abuse cases is essentially that of psychological or behavioral dynamics, specialized knowledge in those areas is not the sole preserve of psychologists or psychiatrists. Professionals in the field of social work who possess satisfactory educational and occupational experience in the area of child behavior may also qualify as experts. *Com. v. Baldwin*, Pa.Super., 348 Pa.Super. 368, 502 A.2d 253 (1985); *State v. Middleton*, Or.Supr., 294 Or. 427, 657 P.2d 1215, 1217–1221 (1983). In each case the expert must demonstrate sufficient knowledge of, and contact with, victims of child abuse to be able to explain the behavioral and psychological characteristics which are material to the issues in a particular case.

■ Given the broad reach of D.R.E. 702, we conclude that Jackson's qualifications sufficed to establish her as an expert in the field of child molestation. Her formal education, her treatment and counseling of numerous victims, and her continued exposure to conferences and literature in the field of child abuse demonstrated sufficient knowledge of, and contact with, victims of child abuse to be able to explain the behavioral and psychological characteristics which were material to the issues in this case. *Middleton*, 657 P.2d at 1220–1221.

■ The scope of admissibility of expert testimony regarding the psychological dynamics and behavioral patterns of complainants in sexual abuse prosecutions has been the focus of abundant recent litigation and comment. *See* Annot, *Admissibility, At Criminal Prosecution, Of Expert Testimony On Rape Trauma Syndrome*, 42 A.L.R. 4th 879 (1985); Comment, *Expert Testimony On Rape Trauma Syndrome: Admissibility And Effective Use In Criminal Rape Prosecutions*, 33 American U.L. Rev. 417 (Winter, 1984); National Legal Resource Center For Child Advocacy And Protection, A.B.A., Papers From A National Policy Conference On Legal Reforms In Child Sexual Abuse Cases, pp. 287–306 (1985). Because this area of the law has received attention only recently, however, the principles governing the admission of such testimony are still evolving. *See State v. Moran*, Ariz.Supr., 151 Ariz. 378, 728 P.2d 248, 250 n. 2 (1986).

Under D.R.E. 702, testimony by a qualified expert is admissible if it involves "scientific, technical, or other specified knowledge" which will "assist the trier of fact to understand the evidence or to determine a fact in issue." The initial question posed here is thus whether expert testimony concerning intrafamily child sexual abuse involves specialized knowledge which will assist the trier of fact to understand the evidence or determine a fact in issue.

Knowledge is specialized only when not possessed by the average trier of fact who lacks the expert's skill, training, or education. Consequently, expert testimony impermissibly invades the province of the jury if it embraces matters in which "the jury is just as competent as the expert to consider and weigh the evidence and draw the necessary conclusions," i.e. matters

3. D.R.E. 702 provides:
   **RULE 702. TESTIMONY BY EXPERTS.**
   If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact

in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

"not beyond the ken of the average layman." *IBN–TAMAS v. United States,* D.C.App., 407 A.2d 626, 632 (1979) (*quoting Lampkins v. United States,* D.C.App., 401 A.2d 966, 969 (1979)).

Appellant argues that expert testimony bolstering the credibility of intrafamily child sex abuse complainants invades the province of the trier of fact because knowledge in the field of intrafamily child sexual abuse is not sufficiently advanced to provide a basis for expert conclusions surpassing in accuracy the common sense credibility determinations of lay triers of fact. It is true that "In most cases, the common experience of the jury should suffice as a basis for assessments of credibility." *State v. Kim,* Hawaii Supr., 64 Hawaii 598, 645 P.2d 1330, 1337 (1982); *see also Com. v. Seese,* Pa.Supr., 512 Pa. 439, 517 A.2d 920, 923 (1986) (Larsen, J., concurring). However, courts in other jurisdictions have reasoned that the unique interpersonal dynamics involved in intrafamily child sexual abuse cases partially exempt those cases from this general proposition. *See Middleton,* 657 P.2d at 1221–23 (Roberts, J., concurring); *State v. Myers,* Minn.Supr., 359 N.W.2d 604, 610 (1984); *State v. Moran,* 728 P.2d at 251–252; *People v. Payan,* Cal.App., 173 Cal.App.3d 27, 220 Cal.Rptr. 126, 130, 132 (1986). Reasoning that "tensions unique to the trauma experienced by a child sexually abused by a family member have remained largely unknown to the public," *Middleton,* 657 P.2d at 1222 (Roberts, J., concurring), these courts conclude that "By explaining the emotional antecedents of the victim's conduct and the peculiar impact of the crime on other members of the family, an expert can assist the jury in evaluating the credibility of the complainant." *State v. Myers,* 359 N.W.2d at 610.

We agree that where a complainant's behavior or testimony is, to the average layperson, superficially inconsistent with the occurrence of a rape, and is otherwise inadequately explained, thus requiring an expert's explanation of its emotional antecedents, expert testimony can assist a jury in this regard. Exposing jurors to the unique interpersonal dynamics involved in prosecutions for intrafamily child sexual abuse can provide jurors with possible alternative explanations for complainant actions and statements that are, to average laypeople, "superficially bizarre," *Middleton,* 657 P.2d at 1220, "seemingly unusual," *Smith v. State,* Nev. Supr., 100 Nev. 570, 688 P.2d 326, 327 (1984), "seemingly inconsistent," *Moran,* 728 P.2d at 251, or normally attributable to "inaccuracy or prevarication." *State v. Lindsey,* Ariz. Supr., 149 Ariz. 472, 720 P.2d 73, 75 (1986). *See also Com. v. Baldwin,* 502 A.2d at 256. Thus informed, the jury will be better able to perform its fact finding duty.

Decisions in the area of intrafamily child sexual abuse reveal two types of victim behavior which, though superficially inconsistent with the average layperson's understanding of reactions to rape, appear to be especially linked to intrafamily child rape, as opposed simply to stress or trauma in general. The first of these is delayed reporting of the alleged offense. *See Powell v. State,* Del.Supr., No. 36, 1986, 527 A.2d 276 (decided this date); *People v. Dunnahoo,* Cal.App., 152 Cal.App.3d 561, 199 Cal. Rptr. 796, 804 (1984); *Smith v. State,* 688 P.2d at 327; *People v. Benjamin R.,* N.Y. App.Div., 103 A.D.2d 663, 481 N.Y.S.2d 827, 831–32 (1984) (victim reluctance to reveal crime); *Com. v. Baldwin,* 502 A.2d at 255; *State v. Petrich,* Wash.Supr., 101 Wash.2d 566, 683 P.2d 173, 179–80 (1984) (en banc); *State v. Myers,* 359 N.W.2d at 610 (1984); *State v. Geyman,* Mont.Supr., 729 P.2d 475, 479–80 (1986); *Allison v. State,* Ga.Supr., 256 Ga. 851, 353 S.E.2d 805, 807 (1987); *People v. Payan,* 220 Cal. Rptr. at 128; *State v. Haseltine,* Wis.App., 120 Wis.2d 92, 352 N.W.2d 673, 676 (1984); *People v. Roscoe,* Cal.App., 168 Cal.App.3d 1093, 215 Cal.Rptr. 45, 48 (1985).

The other is recantation of allegations of abuse, as occurred in this case. *Moran,* 728 P.2d at 250–52; *State v. Lindsey,* 720 P.2d at 75; *Middleton,* 657 P.2d at 1216, 1219–1220; *People v. Reid,* N.Y.Supr., Kings County, 123 Misc.2d 1084, 475 N.Y. S.2d 741, 741–42 (1984); *People v. Payan,* 220 Cal.Rptr. at 128; *Haseltine,* 352

N.W.2d at 676; *Allison*, 353 S.E.2d at 807. We accept, therefore, and recognize the materiality of expert testimony, in cases where there has been a delay in reporting the incident and/or a recantation, which seeks to explain the significance of such a delay or recantation.

■ This holding applies only where the complainant has displayed behavior (e.g. delay in reporting) or made statements (e.g. recantation) which, to average laypeople, are superficially inconsistent with the occurrence of sexual abuse and which are established as especially attributable to intrafamily child sexual abuse rather than simply stress or trauma in general. Absent the first of these factors, no widely held misconception exists which requires an expert's explanation. *See People v. Bledsoe*, Cal.Supr., 36 Cal.3d 236, 203 Cal.Rptr. 450, 681 P.2d 291, 298–299 (1984) (en banc). Moreover, unless there is demonstrated a special nexus to the crime charged rather than simply stress or trauma in general, the use of expert testimony concerning common behavior of victims of the specific crime charged unduly prejudices a defendant. *See State v. Saldana*, Minn.Supr., 324 N.W.2d 227, 229–30 (1982); *State v. Taylor*, Mo.Supr., 663 S.W.2d 235, 240 (1984) (en banc).[4]

### III

■ Our recognition of the limited admissibility of expert testimony in the area of intrafamily child abuse does not lessen the risk that such testimony carries the potential for credibility enhancement. Because of its tendency to bolster the believability of the complainant, and, conversely, to cast doubt on the denial of the defendant, its use in a given context might be unduly prejudicial. This is such a case. Therefore, though we approve the limited use of such testimony, we are required to reverse this conviction because the expert witness was permitted to evaluate the com-

plainant's credibility in terms of statistical probabilities.

In quantifying the incidence of recantation and subsequent reversals of recantation, the expert was permitted to establish a mathematical standard by which the trier of fact could evaluate the complainant's trial testimony. Jackson's quantitative analysis of the complainant's behavior profile effectively placed the complainant in the group of "false" recanters, thus bolstering the credibility of her trial testimony. This evaluation was a significant factor in the State's case, which contained no medical or other independent corroborations of the complainant's claims.

This case illustrates the danger that expert testimony in an area so loosely defined may exceed permissible limits even before an experienced trial judge. Defense counsel, after *voir dire*, offered general objections to the expert's proffered testimony but did not object later to that testimony on the specific ground that statistics and probabilities are inadmissible. Such objection was included, however, in the claim made at trial that the expert's proposed testimony amounted to an inadmissible opinion on credibility. Thus, defense counsel's objections to Jackson's testimony preserved for appeal the claim that an expert witness in child sexual abuse prosecutions may not state the likelihood of any witness' credibility at trial in terms of statistical probabilities.

The trial judge in this case was sensitive to the need to restrict the expert's testimony to insure that she would not venture an opinion on the child's veracity. Nonetheless, the testimony ultimately given indirectly but pointedly produced that undesirable result. In relating the alleged normalcy of recantation against the small percentage (five percent) of children who persist in their recantations, Jackson in effect provided a statistical evaluation of the complain-

---

4. We limit our holding of admissibility of expert testimony, under the guidelines hereafter defined, to cases of intrafamily child sexual abuse. The use of "syndrome" testimony to explain behavior of adult rape victims has not received general acceptance and, indeed, has been reject-

ed in some jurisdictions as not based on a sufficient level of reliability to overcome its jury invasive potential. *See State v. Saldana*, 324 N.W.2d at 230; *People v. Bledsoe*, 681 P.2d at 301.

ant's present veracity. In so doing she impermissibly invaded the credibility province of the trier of fact in "lie detector" fashion.[5]

■ We emphasize that limited use of expert testimony in child sexual abuse prosecutions is appropriate to assist the finder of fact, whether judge or jury, in evaluating the psychological dynamics and resulting behavior patterns of alleged victims of child abuse, where the child's behavior is not within the common experience of the average juror. To the extent such expert testimony is given in general terms and directed to behavior factors in evidence, it is admissible. To the extent it attempts to quantify the veracity of a particular witness or provide a statistical test for truth telling in the courtroom, it is clearly unacceptable.

### IV

■ We recognize that sexual abuse of children is a problem in our culture and we understand the State's concern about such incidents. Often these cases are difficult to prosecute because of the age of the victims and the lack of eyewitnesses. However, a sexual abuse charge by itself imposes a stigma on the accused and conviction provides a serious penalty. In interpreting our rules of evidence, we must be aware not only of the needs of society in general but also the defendant's right to a fair trial. *State v. Myers*, Iowa Supr., 382 N.W.2d 91, 97 (1986). In balancing these competing considerations, we conclude that expert testimony in cases of alleged child sexual abuse must be limited to general principles of social or behavioral science which may assist the jury in determining the child's credibility when there has been a delay in reporting or a recantation not adequately explained by a threat or promise.

■ The expert's role in this area is to provide the trier of fact with background concerning the behavior of the alleged child abuse victim based on the expert's experience and training so that the jury, or judge, may place the child witness' testimony in a behaviorial context. Consistent with this limited role, we require the following conditions for admissibility:

1. The State must provide notice of its intention to use such a witness sufficiently in advance of trial to enable the defendant to prepare to cross-examine the witness. There is a fundamental inconsistency in seeking acceptance of an expert witness' testimony on the basis of its scientific or specialized value while resisting application of the pretrial notice requirements which attend the use of scientific and specialized evidence.[6]

2. Any *voir dire* concerning the qualifications or subject areas of proposed testimony of the witness must be conducted out of the presence of the jury.

3. If the witness qualifies as an expert, the witness may express opinions consistent with the holding in this case. The expert may not directly or indirectly express opinions concerning a particular witness' veracity or attempt to quantify the probability of truth or falsity of either the initial allegations of abuse or subsequent statements.

---

5. [E]xpert testimony ... is not, as some current practice suggests, a mechanism for having someone of elevated education or station engage in a laying on of hands, placing an imprimatur, upon the justice of one's cause.... Experts are not, in theory, called to tell the jury who should win. They are called, instead, to provide knowledge to the jury to permit the jury rationally to decide the case before it.
*State v. Moran*, 728 P.2d at 255 n. 7 (1986) (*citing* M. UDALL & J. LIVERMORE, [Arizona] Law of Evidence § 22, at 28 (2d ed. 1982)).

6. Both Superior Court Criminal Rules and Superior Court Civil Rules mandate extensive discovery of scientific evidence and expert findings and opinions. Super.Ct.Crim.R. 16(a)(2); Super.Ct.Civ.R. 26(b)(4). If the child abuse testimony in this case had been presented by a psychologist rather than a social worker, there is little doubt that any written reports of such an expert would have been discoverable under Super.Ct.Crim.R. 16(a)(2). The State's duty of disclosure is not limited to evidence which is exculpatory. *Bailey v. State*, Del.Supr., 521 A.2d 1069, 1090 (1987). The requirement of pretrial notice, and production of written reports, is clearly compatible with the spirit of Rule 16. We direct the attention of the Superior Court to the need for an appropriate amendment to Rule 16 to correct this deficiency.

4. In a jury trial, the jury must be specifically instructed concerning the significance of the expert's testimony.[7] Where evidence is admissible only for a specific, limited purpose, the court must guide the jury's discretion by ensuring that the jury understands the evidence's inherent limitations.

In view of our conclusion that reversible error occurred at trial, the conviction must be REVERSED.

---

7. As a supplement to the standard jury instruction appearing as Form 4B in the Delaware Criminal Code Pattern Jury Instructions, the jury should be instructed in substantial conformity with the following:

The State has presented the expert witness testimony of _____ for the purpose of providing you with background concerning the behavior characteristics of children who are alleged to be victims of sexual child abuse. The expert's opinion as to the reason for delay and/or recantation is one factor to be used by you in considering the witness' credibility, that is, the extent to which the child's testimony is to be believed. The expert is not permitted to give any opinion as to whether a witness is believable or not believable. Expert testimony does not, by itself, prove that an offense occurred or that the defendant committed such an offense. It is offered solely to assist you in evaluating the testimony of the child. The expert's explanation of child abuse characteristics is but one of the factors upon which credibility may be judged. You should give such weight to the expert's testimony and opinions as you believe they are entitled to receive when considered in the light of all the evidence in this case.