STATE of Delaware

v.

Randall REDD.

Crim. A. No. IN92–10–1719 to 1723.
ID # 92010194.

Superior Court of Delaware,
New Castle County.

Submitted: Aug. 2, 1993.
Decided: Aug. 16, 1993.

Timothy H. Barron, Dep. Atty. Gen., Dept. of Justice, for State.

Edmund D. Lyons, Jr., Wilmington, for defendant.

## OPINION

COOCH, Judge.

This is the Court's ruling on Defendant's Motion for Adverse Psychiatric Examination of Complaining Witness. For the reasons hereinafter set forth, Defendant's motion is denied.

### FACTS AND PROCEDURAL BACKGROUND

This case involves allegations by a fifteen-year-old girl (the victim) that, during the period 1988 to 1991, she had repeated and varied types of sexual contact with Defendant, a thirty-three year old neighbor. The charges pending against Defendant are two counts of Unlawful Sexual Intercourse First Degree (11 *Del.C.* § 775), one count of Unlawful Sexual Contact Second Degree (11 *Del.C.* § 768), one count of Unlawful Sexual Penetration Third Degree (11 *Del.C.* § 770) and one count of Attempted Unlawful Sexual Intercourse First Degree (11 *Del.C.* § 531).

Defendant Randall Redd (Defendant) previously moved pursuant to Super.Ct.Crim.R. 17(c) for an order directing the issuance of subpoenas to four individuals or entities, requiring them to produce various documentary materials pertaining to the victim for pre-trial inspection by him. That motion was denied. *State v. Randall Redd,* Del.Super., IN 92–10–1719, Cooch, J. (June 18, 1993), Mem.Op., 1993 WL 258717.

Defendant represents that discovery from the State indicates that the victim has made statements regarding the alleged sexual abuse to two neighborhood women, to the Division of Child Protective Services ("DCPS"), to a local psychiatrist, to a New Castle County police detective, to a deputy attorney general and "perhaps to others." Defendant maintains that "this case involves the credibility of a victim against the accused." Defendant further alleges what he considers numerous inconsistencies and unbelievable aspects of the victim's account. In the present motion he alleges, in some detail, various purported inconsistencies or discrepancies in connection with her allegations, averring that

1) she has identified an "unlikely" location in the Redd home for the sexual contact;

2) there are discrepancies in the number of times certain sexual contact occurred;

3) there is a discrepancy in her reported date of the last sexual contact with Defendant;

4) there is a discrepancy regarding reporting by her of a possible pregnancy;

5) there are inconsistencies between the report of a local psychiatrist and DCPS records as to whether or why the victim would break up with boyfriends;

6) there exists illogical behavior of the victim in her "willingly" returning to the scene of the sexual assaults (the Redd home); and

7) there are inconsistencies by the victim about Defendant's sexual abuse in McKean High School records.

Defendant characterizes the accused as a "young woman with some history of emotional troubles including two suicide attempts."

Defendant has retained the services of Richard A. Gardner, M.D., a Clinical Professor of Child Psychiatry at Columbia University and, pursuant to the instant motion, seeks to have the court order the victim to undergo a psychological examination given by Dr. Gardner. Defendant represents that "the defense examination by Dr. Gardner is sought so that Dr. Gardner can be prepared to testify at trial either independent of, or in rebuttal to, expert testimony offered by the State consistent with the teachings of *Wheat v. State*, Del.Supr., 527 A.2d 269 (1987)." Defendant offers to make the psychiatric examination as unintrusive and convenient as possible to the victim.

The State advised at oral argument that it will not be calling any expert witness at trial to testify about any behavioral and psychological characteristics of "child sexual abuse syndrome" of the victim. *See Wheat*, 527 A.2d at 272.

In February, 1993, the victim's parents retained Mariam Mammen, M.D., an independent psychiatrist, to examine their daughter. Her February 24, 1993 report notes that the victim superficially cut her wrist on one occasion, but does not specifically mention either of the two suicide attempts to which Defendant refers. Dr. Mammen diagnosed the victim as suffering from "Adjustment disorder with mixed emotional features". The diagnosis concluded: "Rule out post-traumatic stress syndrome." The State has furnished defense counsel with a copy of Dr. Mammen's report, it being otherwise undiscoverable under Super.Ct.Crim.R. 16. See *State v. Randall Redd* at 7.

Dr. Gardner avers that Defendant and the victim share "almost a quasi parent-child relationship in that [the victim] appears to have a habit of seeking out surrogate parents ..." (Supplemental affidavit of Richard A. Gardner, M.D., July 26, 1993).

## DISCUSSION

Defendant's application is a matter of apparent first impression in Delaware in that he seeks an order for the psychiatric examination of the victim "so that [a psychiatrist] can be prepared to testify at trial either independent of, or in rebuttal to, expert testimony offered by the State consistent with the teachings of *Wheat v. State....*"

■ The ordering of a psychiatric evaluation of an alleged victim of a sex crime is soundly within the discretion of the trial court, and requires the showing by a defendant of "compelling" reasons for such examination. *McDonald v. State*, Del.Supr., 307 A.2d 796, 798 (1973); *Thompson v. State*, Del.Supr., 399 A.2d 194, 198 (1979).

**A. Footnote 4 Of *Wheat v. State* Makes Expert Testimony Concerning Child Sexual Abuse Syndrome Inadmissible in Non–Intrafamily Cases.**

■ The Supreme Court of Delaware has accepted and recognized "the materiality of expert testimony, in cases where there has been a delay in reporting the incident and/or a recantation, which seeks to explain the significance of such a delay or recantation." *Wheat*, 527 A.2d at 274. In *Wheat*, the State sought admission of expert testimony regarding the psychological dynamics and behavior patterns of a complainant in a sexual abuse prosecution. The Court held that such testimony was admissible, but noted that

[t]his holding applies only where the complainant has displayed behavior (e.g. delay in reporting) or made statements (e.g. recantation) which, to average laypeople, are superficially inconsistent with the occurrence of sexual abuse *and which are established as especially attributable to intrafamily child sexual abuse* other than stress or trauma in general.

*Wheat*, 527 A.2d at 274. (Emphasis added) Significantly, in footnote 4, the Court qualified the above holding:

"We limit our holding of admissibility of expert testimony, under the guidelines hereafter defined, to cases of *intrafamily* child sexual abuse. The use of "syndrome" testimony to explain behavior of adult rape victims has not yet received general acceptance and, indeed has been rejected ... in some jurisdictions as not based on a sufficient level of reliability to overcome its jury invasive potential. [Citation omitted]"

*Id.* at 274, n. 4 (emphasis added.)

The Supreme Court recently clarified the parameters of the admissibility of expert testimony in intrafamily child sexual abuse cases:

An expert may testify about child sexual abuse syndrome where the complainant has displayed behavior or made statements which, though the average layperson would not recognize as consistent with the occurrence of sexual abuse, are actually attributable to intrafamily child sexual abuse. *Wheat v. State*, Del.Supr., 527 A.2d 269, 274 (1987). Expert testimony is admissible in such instances since it assists the trier of fact to evaluate the psychological dynamics and behavior patterns of alleged victims not within a layperson's common experience while also permitting the trier of fact to determine the credibility of the victim's and other witness' testimony.

*Wittrock v. State*, Del.Supr., No. 373, 1992, Horsey, J. (July 27, 1993) (Order) at 4, 1993 WL 307616.

Thus, *Wheat* and *Wittrock* have expressly limited the admissibility of expert testimony to instances of "intrafamily" sexual abuse. As a result, this Court is bound by the language found in footnote 4 of *Wheat* and its reaffirmation in *Wittrock*.

Intra has been defined as "within." *Black's Law Dictionary* 822 (6th ed. 1990). The Court construes "intrafamily" as meaning "within a family." Defendant and the victim do not share an intrafamily relationship. Therefore, Defendant is precluded from offering expert testimony at trial for the purpose of examining evidence or lack thereof of child sexual abuse syndrome relating to why the victim may have either delayed or recanted her allegation.[1]

Defendant recognizes the apparent barrier to his motion presented by *Wheat*. Accordingly, he claims that he and the victim shared "almost a quasi parent-child relationship in that [the victim] appears to have a habit of seeking out surrogate parents," thus purportedly satisfying the *Wheat* "intrafamily" requirement. Defendant also points to the second sentence of footnote 4 and its reference to problems with the admissibility of "syndrome" testimony *vis a vis* "adult rape victims" as generally indicative that "syndrome" testimony under *Wheat* is potentially allowable for cases where non-intrafamily children are victims.

While this Court acknowledges the originality of Defendant's argument, it declines to accord it any weight. This Court need not and should not traverse the slippery slope of deciding whether the nature of or degree of intimacy present in a particular relationship rises to the level of a "surrogate" familial bond. The Court declines to conclude that the more generally-worded second sentence of footnote 4 expands the plainly stated limitation of the first sentence to "intrafamily" child victims beyond such limitation.

Defendant relies upon *People v. Wheeler*, 151 Ill.2d 298, 176 Ill.Dec. 880, 602 N.E.2d 826 (1992), a case which held that the due process clause of the fourteenth amendment requires, when the State introduces expert

---

1. The Court thus does not reach the question of whether or not, in an intrafamily child sexual abuse case, a defendant may introduce such expert testimony where the State has not sought to do the same.

"syndrome" testimony in a child sexual abuse trial, that a defendant be afforded the right of psychiatric examination of a victim for the same reason. Since, however, the State has represented in this case that it will not be calling an expert witness to give "syndrome" testimony at trial (*Wheat* and *Wittrock* prohibiting such testimony in non-intrafamily child sexual abuse cases), no fourteenth amendment due process concerns are implicated here and *Wheeler* is inapposite.

Therefore, expert "syndrome" testimony from any psychiatric examination of the victim by Dr. Gardner would be inadmissible at trial. The Court accordingly declines to order such examination on that basis.

**B. Defendant Has Otherwise Failed To Discharge His Burden Of Establishing the Necessity Of a Psychiatric Evaluation Of the Victim.**

■ It is well within the discretion of a trial judge, generally, to order a psychiatric evaluation of a victim of a sex crime for "compelling" reasons shown. *McDonald v. State*, 307 A.2d at 798. The moving party has the burden of establishing the necessity of the examination on such a motion. *State v. Banner*, Del.Super., IN 86–01–1058, 1986 WL 13105, Gebelein, J. (Aug. 27, 1986), Mem. Op. at 6. This has been construed as a "heavy burden." *State v. Madric*, Del.Super., IN 89–01–0759, 1989 WL 124900, Herlihy, J. (Aug. 18, 1989), Mem.Op. at 11. Further, this Court has held that "[a]bsent a compelling showing of the necessity of ordering a psychiatric examination of the alleged victim, bare allegations will not suffice." *State v. Pandiscio*, Del.Super., IN 89–02–0308, 1989 WL 124904, Herlihy, J. (Aug. 18, 1989) Mem.Op. at 5. And, in *State v. Miller*, Del.Super., IN 85–09–1500, 1988 WL 7625, Martin, J. (Jan. 25, 1988), (Let.Op.), this Court denied a defendant's motion for a psychiatric evaluation of a child sexual abuse victim, holding that the defendant had shown "no substantial basis" for the issuance of such order. Let.Op. at 6.

■ This Court has thus made it clear that a defendant may not satisfy the required burden by mere allegations that a victim's accusations are "fabrications:"

On a motion to compel the mental examination of a victim of a crime, the moving party has the burden of establishing the necessity of the examination. In this case, the Defendant alleges that the victim's allegations regarding the rapes and attempted rape were creations of an active imagination or that they were fabrications. Accordingly, the defendant contends that a psychiatric examination of the victim is necessary to assist in a determination of whether the victim's story is a chimera or a lie. Bare allegation, however, that a victim's story is a fabrication is not sufficient to discharge one's burden of establishing the need for a psychiatric examination.

*Banner, supra*, at 6.

■ Although Defendant seeks the victim's psychiatric examination to determine the extent, if any, of the victim's child sexual abuse syndrome, Defendant essentially alleges that the victim's story is the product of fabrication, asserting that "this case boils down to one of credibility of the victim versus the Defendant." His allegations about the victim's discrepancies and inconsistencies fundamentally address matters of credibility and, while those allegations arguably are more than "bare allegations" (because they are set forth in some detail), they nevertheless do not provide "compelling" reasons, individually or collectively, to warrant the psychiatric examination of the victim.[2]

---

2. The Court notes, as a factor in the exercise of its discretion, that Defendant has, with the consent of the State, now inspected both the victim's Christiana Hospital emergency room records and Dr. Mammen's report. Dr. Mammen's report concludes: "Diagnosis: ... Rule out post-traumatic stress syndrome." (It is unclear, at this juncture, what exactly is meant by this diagnosis.)

These documents are beyond the scope of Super.Ct.Crim.R. 16 and this Court previously declined Defendant's request to issue a subpoena pursuant to Super.Ct.Crim.R. 17(c) for these records, (with right of pretrial inspection by Defendant). *State v. Randall Redd, supra. Cf. People v. Lucero*, Colo.App., 724 P.2d 1374, 1376 (1986) (holding that the fact that an alleged victim is under the care of a psychologist is merely one factor to consider in connection with a defendant's motion for a victim's psychiatric examination).

Sound policy considerations support this Court's placement of a "heavy burden" on a defendant, coupled with "compelling" reasons, before permitting the mental examination of a victim in a criminal case, particularly in a sexual abuse case:

A psychiatric examination may seriously impinge on a witness' right to privacy; the trauma that attends the role of complainant to sex offense charges is sharply increased by the indignity of a psychiatric examination; the examination itself could serve as a tool for harassment; and the impact of all these considerations may well deter the victim of such a crime from lodging any complaint at all.

*Government of Virgin Islands v. Scuito,* 623 F.2d 869, 875 (3d Cir.1980) (citing *United States v. Benn,* 476 F.2d 1127, 1131 (D.C.Cir. 1973)). *State v. Madric, supra* (observing in *dicta* that psychiatric examinations of victims of sex crimes have a potential "chilling effect"). *See* Gregory G. Sarno, Annotation, *Necessity or Permissibility of Mental Examination to Determine Competency or Credibility of Complainant in Sexual Offense Prosecution,* 45 A.L.R.4th 310 (1986).

Defendant postulates, as a basis for his motion, that "[t]his case involves the credibility of a victim against an accused [and that t]here is no clear corroboration of the victim's charges or the accused's denial." However, and even if so, "expert testimony impermissibly invades the province of the jury if it embraces matters in which 'the jury is just as competent as the expert to consider and weigh the evidence and draw the necessary conclusions,' i.e. matters 'not beyond the ken of the average layman.'" *Wheat,* 527 A.2d at 272, 273 (quoting *IBN–TAMAS v. United States,* D.C.App., 407 A.2d 626, 632 (1979)). Such testimony also is not countenanced by D.R.E. 702.[3]

In *Commonwealth v. Seese,* Pa.Supr., 512 Pa. 439, 517 A.2d 920 (1986) (cited in *Wheat,* 527 A.2d at 273), it was held that the admission of expert testimony on the issue of the credibility of an eight-year-old rape victim was error, encroaching as it did upon the province of the jury. The *Seese* court observed that

[t]he question of whether a particular witness is testifying in a truthful manner is one that must be answered in reliance upon inferences drawn from the ordinary experiences of life and common knowledge as to the natural tendencies of human nature, as well as upon observations of the demeanor and character of the witness. [citation omitted] The phenomenon of lying, and situations in which prevarications might be expected to occur, have traditionally been regarded as within the ordinary facility of jurors to access. For this reason, the question of a witness' credibility has routinely been regarded as a decision reserved exclusively for the jury [citation omitted].

*Seese,* 517 A.2d at 922.

■ This is not to say that a psychiatric or psychological examination of a victim will never be appropriate, even in cases where issues of credibility are extant. Cases from other jurisdictions are not uniform in their recitation of reasons or bases for ordering, or in declining to order, mental examinations of sex crime victims, *see generally Sarno, supra.* Although a number of courts have indicated, as a reason for declining to order a mental examination of a victim, that a victim's allegations had been "corroborated" to some degree, *see, e.g., People v. Lewis,* Ill. Supr., 25 Ill.2d 442, 185 N.E.2d 254 (1962), other courts have held that lack of corroboration (or only slight corroboration) does not compel a psychiatric examination of a victim. Thus, in *Kitchen v. State,* Ark.Supr., 271 Ark. 1, 607 S.W.2d 345 (1980), the court

"[took] the position that the fact that the testimony of an alleged victim in a trial on a charge of a sexual offense will be without corroboration, or will be only slightly corroborated, does not compel a psychiatric examination or evaluation of a witness con-

---

3. D.R.E. 702 provides:
**RULE 702. TESTIMONY BY EXPERTS**
If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

sidering her competency to testify ... although there is respectable authority supporting a contrary view."

*Kitchen,* 607 S.W.2d at 351. This seems the better rule, as many child sexual abuse cases, given the very nature of the alleged crime, will have little or no corroboration.

New Jersey courts have adopted a "substantial need" criterion before ordering a psychiatric examination of a victim in a child sexual abuse prosecution:

> [I]n order to satisfy the "substantial need" criterion for a psychiatric examination, there must be a showing of some deviation from acceptable norms, such as an identifiable or clinical psychiatric or similar disorder, beyond the realm of those human conditions that ordinary experience would confirm as normal.

*State v. R.W.,* N.J.Supr., 104 N.J. 14, 514 A.2d 1287, 1291 (1986).

New Jersey's "substantial need" criterion is an amplification of, and is not inconsistent with, Delaware's "compelling" reasons standard. *Compare McDonald v. State.* Here, Defendant has not shown a "substantial need" for the victim's psychiatric examination, even though Dr. Mammen's diagnosis is that the victim has "Adjustment disorder with mixed emotional features." Although this is a mental disorder recognized by the American Psychiatric Association, such disorder is deemed "apparently common," being characterized generally by "impairment in social or occupational functioning or symptoms that are in excess of a normal and expected reaction" to a stressful event. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders,* 299–302 (3d ed. 1980) (hereinafter "DSM–III").

According to DSM–III, an example of "Adjustment Disorder with Mixed Emotional Features" would be "an adolescent, after moving away from home and parental supervision, who reacts with ambivalence, depression, anger, and signs of increased dependency." DSM–III at 301. This particular disorder, "apparently common," is not of the many more serious type of mental disorders that might warrant the ordering of a victim's psychiatric examination, and Dr. Mammen's report, which appears to rule out "post-trau-

matic stress syndrome," does not otherwise suggest to the Court the need for an additional examination. As the report states, the victim "presents as [a] frightened but angry adolescent with symptoms of anxiety and depression."

■ The rule in Delaware, then, is this: requests by defendants for mental examinations (psychiatric or psychological) in child sexual abuse cases are addressed to the sound discretion of the trial judge. The moving party bears a heavy burden in this regard and must proffer compelling reasons for same in order to prevail on such motion. Bare allegations of fabrications will not suffice, nor will detailed allegations of fabrications if such detailed allegations do little more than attack the credibility of the victim since questions of a victim's credibility are reserved exclusively for the jury. The moving party must show "some deviation from acceptable norms, such as an identifiable or clinical psychiatric or similar disorder, beyond the realm of those human conditions that ordinary experience would confirm as normal." *R.W.,* 514 A.2d at 1291.

It should be remembered, as correctly observed by the *R.W.* court, that

> ... [v]ictims of sex crimes are no less reliable as witnesses than other crime victims, who are not routinely subjected to psychiatric examinations as a pre-condition to their qualifications to testify. *Id.* at 1295.

Defendant's motion for a psychiatric examination of the child victim in this case offers, as its principal supporting reason, the lack of credibility of the victim (albeit interwoven with a desire to explore the existence and/or extent of a "syndrome"). This is not a compelling reason to order this victim's psychiatric examination and substantial need therefor has not been shown. Accordingly, Defendant's motion is denied.

### CONCLUSION

For the reasons set forth herein, defendant's motion for Adverse Psychiatric Examination of Complaining Witness is **DENIED**.