**Jacob McDONALD, Jr., Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

June 14, 1973.

Henry A. Wise, Jr., and William J. Taylor, Asst. Public Defenders, Wilmington, for appellant.

Jerome O. Herlihy, Chief Deputy Atty. Gen., Wilmington, for the State.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice:

The defendant appeals his conviction of first degree murder and rape.

The defendant entered the apartment of the deceased, her daughter, and the daughter's infant son, around 12:15 p.m. He slapped the daughter and threatened the deceased, and forced them into a bedroom. He then bound and gagged the daughter.

The defendant then forced the deceased into the living room. The daughter, still bound in the bedroom, heard her mother groaning. In about five minutes, the defendant returned to the bedroom for a pillow, which he took into the living room. The mother began groaning again and begged to be left alone. In a short while, the daughter no longer heard her mother.

The defendant told the daughter her mother was dead and then brought her to the living room. She saw her mother, apparently dead, on the couch with her dress pulled up. The defendant's leather jacket and belt were nearby. The defendant and the daughter moved the deceased's body to the bedroom.

The defendant then made the daughter cook him some hot dogs. After eating, he then raped the daughter and left the apartment, about an hour and a half to two hours after he first entered.

An autopsy of the deceased performed around 4:30 p.m. revealed live sperm in her vagina. The motility of the sperm indicated that they were three to four hours old.

The autopsy indicated that the deceased had been smothered. There were indications that she struggled while being smothered. In addition, the deceased suffered facial injuries.

The daughter was also found to have had recent intercourse.

F.B.I. tests established that fibers found on the defendant's shirt were similar to those of articles at the crime scene.

The defendant presented several witnesses who claimed he was home at the time the crime occurred. He raises, essentially, four arguments in attacking his conviction.

First, he argues that it was error to refuse to order the daughter to submit to a psychiatric examination. The argument is based on the fact that the relatively young (17) daughter had previously, on two occasions, accused men of rape. On both occasions, no action was taken against the accused.

■ The matter of ordering such an examination is within the discretion of the Trial Court. See Ballard v. Superior Court, 64 Cal.2d 159, 49 Cal.Rptr. 302, 410 P.2d 838 (1966); State v. Klueber, 81 S.D. 223, 132 N.W.2d 847 (1965); State v. Clasey, 252 Or. 22, 446 P.2d 116 (1968).

■ We find no abuse of discretion here. The jury knew that the daughter had twice previously made unsubstantiated claims of rape. This left the issue to the jury purely on the basis of credibility. Since there is no showing of any compelling reason to the contrary, there is no abuse of discretion in the refusal of the Trial Judge to order a psychiatric examination of the witness.

The defendant next argues that it was error to join the murder charge and the rape charge at his trial because they were two separate crimes, committed against different individuals at different times. The essence of the argument is that evidence of one crime is inadmissible in the trial of the other.

■ A motion for severance is addressed to the sound discretion of the Trial Court. Jenkins v. State, Del.Supr., 230 A. 2d 262 (1967). We find no abuse in refusing to sever the offenses.

The criminal activity of the defendant with respect to the two crimes was so inextricably intertwined so as to make proof of one crime impossible without proof of the other. Thus, the joinder was proper. Bantum v. State, 7 Terry 487, 85 A.2d 741 (1952). The mere fact that the crimes were "separate", committed against different individuals with a lapse of time between them, does not require severance. Indeed, such was the case in *Bantum*.[1]

■ Next, the defendant urges that the Trial Court's instruction on the felony-murder rule[2] was erroneous. The Trial Judge instructed the jury as follows:

"You are further charged that it is not necessary, in order for you to return a verdict of first degree murder, for the State to prove that the defendant, Jacob McDonald, intended to kill Francis Elliot, also known as Frances Dickerson, but simply that the killing occurred as part of the rape or in furtherance of the commission of the rape or to conceal the rape."

Relying upon State v. Opher, 8 W.W.Harr. 93, 188 A. 257 (1936), the defendant

1. In *Bantum*, the defendant entered the victim's home, quarreled with the victim and then shot him. The defendant then proceeded to shoot the victim's wife. He left the home, reloaded his pistol, and re-entered the home. He again shot the victim's wife, robbed her and then stole the victim's car. Evidence of the assault on the wife, the robbery, and the murder, were held admissible at the trial for murder.

2. 11 Del.C. § 571 provides in part that: "Whoever commits the crime of murder . . . in perpetrating or attempting to perpetrate the crime of rape . . . is guilty of murder in the first degree. . . ."

argues that a murder committed to conceal a rape does not come within the felony-murder rule. But, according to the argument, such a murder comes within the ambit of the Trial Judge's instruction.

In *Opher,* the defendant raped or attempted to rape the victim. The victim afterwards escaped the defendant's grasp and told him that she was going to report the incident to her mother, whereupon the defendant shot and killed the victim. The *Opher* Court held that the evidence did not sustain a verdict under the felony-murder rule since the shooting was a "subsequent act" which was "detached" from the rape or attempted rape. It is clear that the detached nature of the killing vitiated any legal relationship it had to the rape.

In Parson v. State, Del.Supr., 222 A.2d 326 (1966), we expounded on the concept of a legal relationship between the killing and the rape, as expressed in *Opher.* We stated that:

"Generally speaking, we think the law is that a killing so closely connected with an attempted rape as to be fairly within the *res gestae* of the attempt is murder while attempting rape. It suffices if the killing can be said to have occurred as a part of the perpetration of the crime, or in furtherance of an attempt or purpose to commit it or conceal it." (222 A.2d at 332).

We feel that the Trial Court's instruction correctly embodies the principles set forth in *Parson.*

The Trial Judge also instructed the jury:

"With respect to the time sequence of the killing, I further charge you that it is not enough that the killing occurred either before or soon or presently after the rape was consummated. There must be such a legal relationship between the two that it can be said that the killing occurred by reason and as a part of the rape, to wit, that the perpetration of the rape had a legal relationship to the killing and was concurrent with it in part, at least, and a part of it in an actual and material sense. Tersely put, death must have been the probable consequence of the unlawful act."

When viewed as a whole, the Trial Court's instructions clearly precluded the jury from finding the defendant guilty of murder under the felony-murder rule if it felt the murder was "detached" from the rape of the victim. Accordingly, we find no merit to this argument.

Finally, defendant argues that the evidence does not support his conviction. We have reviewed the evidence in the light most favorable to the State, and find that there is ample evidence to support them.

The conviction below is affirmed.