Thomas B. YOUNGER, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.
Submitted: Feb. 26, 1985.
Decided: June 20, 1985.

Patricia C. Hannigan, Asst. Public Defender, Office of the Public Defender, Wilmington, for appellant.

Ferris W. Wharton, Deputy Atty. Gen., Dept. of Justice, Wilmington, for the appellee.

Before HERRMANN, Chief Justice, McNEILLY and HORSEY, Justices.

HERRMANN, Chief Justice:

The defendant, Thomas Younger, appeals from convictions on two counts of Rape in the First Degree, one count of Attempted Rape in the First Degree and three counts

of Kidnapping in the First Degree. The Superior Court sentenced the defendant to six terms of life imprisonment, two terms of which specified the first twenty years as minimum mandatory incarceration. We find no reversible error upon any of the grounds of this appeal. Accordingly, we affirm.

## I.

The State's evidence established the following facts:

At approximately 8:30 or 9:00 o'clock one evening in January 1983, a 21-year old woman was walking home after shopping at a liquor store on Concord Avenue in Wilmington. In the 600 block of West 23rd Street, she was grabbed from behind by an unknown assailant. He put one arm around her throat and the other around her mouth. The attacker told the victim that she would not be hurt if she did exactly as she was told. He then dragged the victim from the street, behind a group of houses, where he faced her up against a garage and raped her from behind. After taking the victim's beer, the assailant fled. The victim never saw her attacker's face.

Nine days later, a 20-year old woman left the Howard Career Center at 7:45 p.m. and started walking towards her home near 32nd Street. In the 200 block of West 31st Street, she was grabbed from behind by an unknown assailant. He placed one hand over her mouth and the other around her waist. The attacker told the victim that if she did not make any noise, he would not hurt her. He dragged the victim from the street to a back alley. There, behind a parked truck, he raped her from behind; then, the attacker fled. The victim smelled alcohol on the attacker's breath, but she never saw his face.

At approximately 7:45 one evening in March 1983, a 16-year old girl left her house on Harrison Street and started walking to her aunt's house on Washington Street. While she was walking on Concord Avenue, a man approached her from behind. When she turned around, the man ran past her, disappearing around a corner out of sight. She continued walking, but was grabbed from behind in the 300 block of West 20th Street. The attacker placed one hand over the victim's mouth and the other around her throat. The attacker told the victim that he would kill her if she screamed. The victim smelled alcohol on the attacker's breath. The victim struggled with the assailant, biting him on the hand, thereby enabling her to break free. As the victim ran to a friend's house, the attacker ran into a church. At her friend's house, the victim called her sister. Accompanied by her boyfriend, the sister went immediately to the victim's aid. As they arrived, the victim saw her attacker leaving the church and pointed him out. The sister's boyfriend struggled with the man the victim had identified—the defendant. At that moment, a Wilmington police officer, who was responding to the attempted rape complaint, arrived and saw the two men fighting. The sister's boyfriend identified the defendant to the police as the assailant. Smelling alcohol on the defendant's breath, the police officer questioned him.

The officer took the defendant to the police station where he was arrested. Later after questioning, the defendant confessed to having committed the attack that night, as well as the two other incidents of rape.

\* \* \* \* \* \*

Approximately one week after the attempted-rape victim was attacked, she picked the defendant out of a police line-up. Through a one-way mirror, the victim viewed seven black males seated at a table, holding numbers. Though some of the participants in the line-up were police officers; none wore uniforms.

Prior to trial, the defendant filed a Motion to Sever Offenses and a Motion to Suppress the confession that he had given to the police several hours after his arrest. A hearing was held on the Motion to Suppress. At the hearing, the defendant recanted his confession, saying that it was

coerced by threats of physical violence and promises of probation. The two police officers, who questioned the defendant soon after his arrest, said that the defendant gave the statement voluntarily. The officers testified that no one threatened the defendant; nor, did any one make promises that the defendant would receive lenient treatment if he confessed. The Trial Judge denied the Motion to Suppress. At a later date, based on the defendant's confession, he also denied the Motion to Sever Offenses.

Thereafter, a jury trial was held in the Superior Court. The defendant's tape-recorded confession was played for the jury. The defendant testified, recanting his confession and giving his version of the events surrounding the attack of the attempted-rape victim. Moreover, he again asserted that the police officers had obtained his confession by threatening him with physical harm and, in the alternative, promising him probation. In rebuttal, the State called to the stand a court reporter to read into the record the suppression hearing testimony of Detective Williams, one of the arresting officers. Detective Williams was not able to testify at trial because his doctor had confined him to his house, under medication, awaiting surgery. The defense objected. However, the Trial Court ruled that Detective Williams was "unavailable" as a witness and permitted the court reporter to read his former testimony into the record.

After the two-day trial, the case was submitted to the jury at 2:26 p.m. on November 23, the day before Thanksgiving. At 4:51 p.m., the jury returned a verdict of guilty as charged.

## II.

The defendant contends that his confession was not voluntarily made and that, therefore, the Trial Judge abused his discretion in refusing to suppress the statement. We find no merit in this contention.

At the suppression hearing, the only evidence which the Court entertained was the testimony of live witnesses. The defendant testified that his confession was coerced by threats and promises; the police officers denied these allegations. Therefore, the issue of coercion in this case turns on the question of credibility.

██ It is well-settled that, where, in the exercise of discretion, the trial judge bases his findings of fact on the credibility of various witnesses, this Court will uphold that determination. *Barks v. Herzberg,* Del.Supr., 206 A.2d 507 (1965). *See also Reynolds v. Reynolds,* Del.Supr., 237 A.2d 708 (1967). We find no evidence that the Trial Judge abused his discretion in admitting the defendant's confession into evidence.

## III.

The defendant cites as error the Trial Court's denial of his Motion to Sever Offenses and claims prejudice as a result. We find no error and no prejudice.

██ Under Superior Court Criminal Rule 8(a),[1] a defendant may be tried simultaneously for two or more offenses if the offenses are "of the same or similar character," or are "based on [two] or more acts or transactions connected together or constituting parts of a common scheme or plan." If, however, the trial court finds that a joinder of offenses will prejudice either party, it may sever offenses. Super. Ct.Crim.R. 14.[2] Such decision rests within

1. Super.Ct.Crim.R. 8(a) provides:
   (a) **Joinder of Offenses.** Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on 2 or more acts

   or transactions connected together or constituting parts of a common scheme or plan.

2. Super.Ct.Crim.R. 14 provides in pertinent part:
   If it appears that a defendant or the State is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the Court may order an election or separate trials of

the sound discretion of the trial court, *Lampkins v. State,* Del.Supr., 465 A.2d 785, 794 (1983); *Bates v. State,* Del.Supr., 386 A.2d 1139, 1141 (1978), and will not be overturned, absent a showing of prejudice by the defendant. *Lampkins v. State, supra* at 794; *Bates v. State, supra* at 1142.

■ In determining whether the Trial Court abused its discretion, we must examine the facts in each particular case. *Bates v. State, supra* at 1141; *Jenkins v. State,* Del.Supr., 230 A.2d 262 (1967). In the instant case, the two rapes occurred within ten days of each other, at about the same time of day, in the same neighborhood. The attempted rape also occurred in the same general vicinity as did the two rape incidents. As the evidence reveals, the manner in which the two rape victims were attacked was virtually the same. In addition, the method of attack in the attempted rape case paralleled the two rape incidents up to the point when the victim began struggling with her assailant. As in this case, where offenses are of the same general character, involve a similar course of conduct and are alleged to have occurred within a relatively brief span of time, it is proper to try the offenses together. *Brown v. State,* Del.Supr., 310 A.2d 870, 871 (1973). "The mere fact that the crimes were 'separate,' committed against different individuals with a lapse of time in between them, does not require severance." *McDonald v. State,* Del.Supr., 307 A.2d 796, 798 (1973).

■ Moreover, here the defendant himself linked all three crimes in his confession to police. Where proof of more than one crime is "so inextricably intertwined so as to make proof of one crime impossible without proof of the other," *McDonald v. State, supra* at 798, the offenses should not be severed. In this case, proving that the defendant committed the two rapes would have been extremely difficult without introducing into evidence the

counts, grant a severance of defendants or *provide* whatever other relief justice requires.

voluntary statement that he gave to police following his arrest on the attempted rape charge.

Nor, has the defendant carried his burden of demonstrating that prejudice resulted from the refusal to grant a severance. As this Court noted, "[M]ere hypothetical prejudice is not sufficient." *Bates v. State, supra* at 1142.

## IV.

Further, the defendant alleges that his due process rights were violated by an impermissibly suggestive line-up identification and a tainted in-court identification.

■ An identification procedure will not pass constitutional muster where it is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). *See also Harris v. State,* Del.Supr., 350 A.2d 768 (1975). That a confrontation is suggestive, without more, however, cannot amount to a due process violation; the unnecessarily suggestive identification procedure must also carry with it the increased danger of an irreparable misidentification. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). *See Harris v. State, supra; Anderson v. State,* Del.Supr., 452 A.2d 955 (1982) (per curiam). In other words, if the Court determines under the totality of circumstances that a line-up is impermissibly suggestive, but nonetheless reliable, evidence of the confrontation will not be excluded at trial. *Manson v. Brathwaite, supra; Neil v. Biggers, supra.* We do not reach the question of reliability, because we do not find that the confrontation conducted in this case was impermissibly suggestive.

\* \* \*

Here, there are no indications that the line-up afforded the attempted-rape victim any undue opportunity to single-out the defendant when she made her identification. All participants in the line-up were black males. Though they may have varied in size slightly, all were seated at a table. The defendant contends that the line-up procedure was impermissibly suggestive, claiming that the victim "knew" four of the participants to be police officers. It is clear from the record during voir dire that the victim merely suspected that one participant was a police officer, stating that "he looked like a cop," although he was not wearing a uniform. Moreover, the victim made clear in her testimony that her suspicion bore no relation to her eventual identification of the defendant. She stated that she looked for the man who attacked her and picked him out of the line-up; that man turned out to be the defendant.

■ We do not find that this confrontation was unnecessarily suggestive. Therefore, the Court below did not err in admitting into evidence the attempted-rape victim's prior out-of-court identification and the in-court identification which resulted therefrom.

### V.

The defendant also claims that the Trial Judge committed reversible error in ruling Detective Williams "unavailable" to testify, thereby permitting the introduction of his suppression hearing testimony into evidence.

Former testimony is a statutorily-recognized exception to the rule against hearsay. D.R.E. 804(b)(1).[3] However, before the former testimony can be admitted into evidence, the proponent must demonstrate that the hearsay declarant is "unavailable" to testify as a witness in court. D.R.E. 804(a)(4).[4] D.R.E. 804(a)(4) states that a declarant will be considered "unavailable" when he "is unable to be present or to testify at a hearing because of death or then existing physical or mental illness or infirmity."

■ A determination of whether the witness is "unavailable" rests within the sound discretion of the trial court. *United States v. Faison*, 3d Cir., 679 F.2d 292, 295 (1982).[5] In the *Faison* case, the Court noted that the decision to declare the witness "unavailable," rather than granting a continuance to enable the witness to recover, must balance the policy favoring live testimony against the policy promoting the ready disposition of criminal trials. *Id.* at 297. The Court enumerated the relevant factors which a trial judge must consider in exercising his discretion:

the importance of the absent witness for the case; the nature and extent of cross-examination in the earlier testimony; the nature of the illness; the expected time of recovery; the reliability of the evidence of the probable duration of the illness; and any special circumstances counselling against delay.

3. D.R.E. 804(b)(1) provides:
   **(b) Hearsay Exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
   **(1) Former Testimony.** Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross or redirect examination.
   D.R.E. 804(b)(1) tracks F.R.E. 804(b)(1). D.R.E. 804, Comment.

4. D.R.E. 804(a)(4) tracks F.R.E. 804(a)(4). D.R.E. 804, Comment.

5. We rely heavily on the *Faison* case as persuasive authority for two reasons: (1) The Delaware Uniform Rules of Evidence track the Federal Rules of Evidence; and (2) Since the Federal Rules of Evidence were adopted in 1975 (and the Delaware Rules, in 1980), there has been a dearth of reported cases dealing with the meaning of "unavailability" in terms of existing physical or mental disability. *See United States v. Faison*, D.N.J., 564 F.Supp. 514, 520 (1983), *upon remand from*, 3d Cir., 679 F.2d 292 (1982).

*Id.* at 297. Moreover, the Court noted that because "witness availability affects the court's ability to manage its cases, the trial court's decision to refuse an adjournment and to admit prior testimony must be treated with respectful deference." *Id.* at 297.

In *Faison*, the Court found that the trial judge abused his discretion by refusing to grant an adjournment. Central to the Court's analysis was the fact that the ailing hearsay declarant was a key witness for the prosecution, thereby increasing in importance the necessity of conducting a live cross-examination. *Id.* at 297. Moreover, because in *Faison* a first trial had yielded a hung jury, the Court further suggested that trial courts should be especially careful in such a case "not to tip the balance [in favor of the prosecution] in a close case against the defendant." *Id.* at 297.

■ Unlike *Faison*, in the instant case, Detective Williams was not a key witness. The State called him as a rebuttal witness merely to corroborate what the other police officer had said. The suppression hearing testimony revealed that the defense had had ample opportunity to cross-examine Detective Williams. In addition, the number of victims and the eight-month interval between the arrest and the date of trial seemed to weigh against any unnecessary delays. Unlike *Faison*, this case did not present an unusual circumstance, such as a hung jury in a prior trial, which would have militated against the use of former testimony. Therefore, we find that the Trial Judge did not abuse his discretion in admitting the detective's former testimony into evidence, rather than granting a continuance to await his recovery.

■ However, as the Court in *Faison* noted, the Trial Judge must build a record sufficient to permit this Court to evaluate the soundness of his decision to admit the former testimony. *United States v. Faison, supra* at 297. *Accord B.E.T., Inc. v. Board of Adjustment of Sussex County,*

Del.Supr., 497 A.2d 784 (1985) (per curiam); *Storey v. Camper,* Del.Supr., 401 A.2d 458 (1979). Here, though the Trial Judge failed to specify the factors he considered in making the ruling to admit the former testimony into evidence, such failure did not prejudice the defendant and, therefore, constitutes harmless error.

&ast; &ast; &ast; &ast; &ast; &ast;

■ The defendant argues that, in addition to violating the Rules of Evidence, the admission of former testimony violated his rights under the Confrontation Clause of the Sixth Amendment.[6] The Confrontation Clause does not guarantee to a defendant an absolute right to cross-examine every witness. *Ohio v. Roberts,* 448 U.S. 56, 62–63, 100 S.Ct. 2531, 2537–2538, 65 L.Ed.2d 597 (1980). *See also Burke v. State,* Del.Supr., 484 A.2d 490 (1984). Where a hearsay declarant is not present for cross-examination at trial, the dictates of the Confrontation Clause will be satisfied if: 1) the declarant is unavailable, and 2) the out-of-court statement "bears adequate 'indicia of reliability.'" *Ohio v. Roberts, supra* 448 U.S. at 66, 100 S.Ct. at 2539; *see also Burke v. State, supra* at 495. Noted the Supreme Court in *Roberts,* "Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Ohio v. Roberts, supra* at 66, 100 S.Ct. at 2539.

■ In this case, admitting the detective's former testimony into evidence did not violate the defendant's right to confront witnesses against him, as provided in the Confrontation Clause. The detective was an "unavailable" witness within the meaning of D.R.E. 804(a)(4). Moreover, here, reliability can be inferred because former testimony is a universally-recognized exception to the rule against hearsay. D.R.E. 804(b)(1). *See Ohio v. Roberts, supra* at 66, 100 S.Ct. at 2539.

---

**6.** U.S. Const. amend. VI provides in pertinent part:

In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him; &ast; &ast; &ast;

## VI.

The defendant argues that the Trial Judge abused his discretion in submitting the case to the jury at 2:26 in the afternoon before the Thanksgiving holiday. We find no merit in this contention.

A conviction will not stand if the judge's conduct towards the jury "in its context and under all the circumstances ... had a coercive effect." *Jenkins v. United States*, 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965). The defendant contends that, because the Thanksgiving holiday was fast approaching, the jurors felt pressure to reach a verdict before 5 p.m. out of fear of being sequestered over the holiday weekend. As this Court noted under similar circumstances in *Styler v. State*, Del.Supr., 417 A.2d 948, 951 (1980), "Under the time frame in which the case was tried and the issues put to the jury, the circumstances were not coercive as a matter of law."

\*     \*     \*     \*     \*     \*

For the foregoing reasons, the convictions are hereby AFFIRMED.