IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE          )
                          )
                          )
          v.              )          I.D. No. 1507000321
                          )
                          )
                          )
LETONI WILSON,            )
                          )
          Defendant.      )

Submitted: June 6, 2016
Decided: July 14, 2016

Upon Defendant's Motion for Judgment of Acquittal. **DENIED.**
Upon Defendant's Motion for New Trial. **DENIED.**

## **OPINION AND ORDER**

Gregory C. Strong, Esquire and David Weinstein, Esquire, Deputy Attorneys General, Carvel State Office Building, 820 North French Street, Wilmington, DE 19801, Attorneys for State of Delaware.

Andrew J. Meyer, Esquire and Gabriel M. Baldini, Esquire, Assistant Public Defenders, Carvel State Office Building, 820 North French Street, Wilmington, DE 19801, Attorneys for Defendant Letoni Wilson.

**WHARTON, J.**

## I.  INTRODUCTION

The defendant, Letoni Wilson ("Wilson") was charged in a single count indictment with Theft of $100,000 or more.  She was found guilty on April 22, 2016 after a trial by jury.  On April 29th, Wilson moved for a judgment of acquittal pursuant to Superior Court Criminal Rule 29(c), or, alternatively for a new trial pursuant to Superior Court Criminal Rule 33.[1]  The State opposes both motions.[2]

In considering a motion under Rule 29(c), the Court determines whether any rational trier of fact, viewing the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the State, could find a defendant guilty beyond a reasonable doubt.  Here, Wilson focuses on the level of the felony, arguing that the State did not prove she stole in excess of $100,000.  The Court finds that a reasonable jury could have found Wilson guilty of Theft of $100,000 or more.  Accordingly, the Motion for Judgment of Acquittal is **DENIED**.

A new trial may be granted under Rule 33 if required in the interest of justice.  Wilson argues that the guilty verdict returned by the jury was an improper compromise verdict.  The Court disagrees and, therefore, the Motion for New Trial is **DENIED**.

## II.  FACTS AND PROCEDURAL HISTORY

Between August 2010 and June 2012, Wilson served as the trustee of a

---

[1] D.I. 23

[2] D.I. 25.

2

special needs trust established for the benefit of her son, Tirese Johnson.[3] The trust was established after a civil suit brought on Tirese's behalf resulted in a substantial judgment in his favor.[4] Wilson was also Tirese's guardian.[5] The special needs trust and the guardianship were established with the assistance of Thomas Herlihy, III, Esquire.[6] Mr. Herlihy, called as a defense witness, testified that he explained to Wilson what a special needs trust was and what types of distributions from the trust were permissible.[7] He provided her with written explanatory materials as well.[8] He also testified that he explained to Wilson that she needed to account for and document "every penny" of trust assets she spent.[9]

The State presented the testimony of Tirese's father, Thomas Johnson, two investigators from the Department of Justice, Frank Robinson and Robert Irwin, and Clyde Hartman, a CPA and forensic accountant also employed by the Department of Justice. The State introduced into evidence, through the two investigators, the special needs trust agreement,[10] monthly bank accounts for the checking and money market accounts into which the trust funds were deposited,[11]

---

[3] D.I 23, at ¶ 2.
[4] Tr., April 20, 2016, at 167.
[5] *Id.*, 166-167.
[6] *Id.*, at 165-166.
[7] *Id.*, at 193-194.
[8] *Id.*, at 200-205.
[9] *Id.*, at 210.
[10] State's Ex. 2.
[11] State's Ex. 5.

the Guardian's First Accounting,[12] Wilson's bank records,[13] receipts for Wilson's various purchases and travel expenses,[14] and Wilson's recorded statement.[15]

Hartman, the forensic accountant, prepared a report after reviewing all of the documents. Portions of his report were introduced into evidence.[16] He concluded that Wilson properly spent $361,563.30 out of the corpus of the trust.[17] The primary assets purchased with those funds were a residence (with improvements), furniture and a vehicle.[18] Based on the nature of documents he reviewed, he classified $36,823.51 as Wilson's personal expenses which were not permissible under the special needs trust agreement.[19] Finally, he determined that there was a total of $288,606.07 in cash withdrawals from the trust for which there were no receipts or other documentation indicating the purpose of the withdrawal.[20] He classified these expenditures as impermissible.[21] The total of the documented personal expenses and the undocumented cash withdrawals - $325,429.58 - is the amount the State alleged that Wilson stole from the trust.[22]

In addition to Mr. Herlihy, the defense called Jennifer Mensinger, Esquire.

---

[12] State's Exs. 3-4.
[13] State's Ex. 6.
[14] State's Exs. 7-10.
[15] State's Ex. 11.
[16] State's Exs. 12-14.
[17] State's Ex. 12.
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*

Ms. Mensinger was appointed guardian *ad litem* for Tirese by the Family Court.[23] It was her belief that money from the trust account was spent for Tirese's benefit.[24] Finally, Wilson testified on her on behalf. She testified that she really did not fully understand the limitations imposed on expenditures from the special needs trust and that the expenditures she made were for Tirese's benefit.[25] She claimed that the reason many of her expenditures were not documented was because the supporting documents were destroyed in a flood at her home.[26]

The jury began its deliberations on the morning of the fourth day of trial.[27] At about 3:00 p.m. the Court received a note. The note read:

1. Do not agree on theft over $100,000. No proof of it.
2. Does not believe Ms. Johnson (sic) intended to deprive her son.
3. Not enough documentation.[28]

The Court observed that the note, while sounding like a verdict, was not a verdict since the jury did not report that it had reached a verdict and the note was not on the verdict sheet provided to the jury.[29] Further, the note was not signed, did not indicate how many of the jurors held to the sentiments expressed in the note, and did not state that the jury was unable to reach a verdict.[30] With those observations

---

[23] Tr., April 21, 2016, at 55.
[24] *Id.,* at 94.
[25] *Id.,* at 121.
[26] *Id.,* at 146-149.
[27] Tr., April 22, 2016, at 3, 22.
[28] *Id.,* at 22-23.
[29] *Id.*
[30] *Id.*

in mind, the Court determined to give an instruction it hoped would clarify what the jury was communicating to the Court.[31] Accordingly, the Court gave the following instruction without objection, specifically telling counsel that it was not proposing to give an *Allen* charge because the note did not convey that the jury was unable to reach a verdict:

> I'm going to make some comments now, and I am not asking for any in-court feedback. I'm going to send you back into your jury room to talk about what you want to do next. So please do not answer any of these questions now.
>
> What your note does not tell me or the parties is whether or not all 12 of you agree to everything that is listed in this note.
>
> What you are asked to do as jurors is to reach a unanimous verdict on the charge of Theft $100,000. By that I mean all 12 of you must agree either that the State has proven that the defendant committed the elements of the crime of Theft Over $100,000 beyond a reasonable doubt or the State has not proved that she has committed all of the elements of Theft Over $100,00 beyond a reasonable doubt.
>
> So what I need you to do is to return to the jury room, and if all 12 of you agree on a particular verdict, then you need to fill out the verdict form accordingly. If you do not all 12 agree on a particular verdict, it would be helpful if you told us that, and then we will go from there, okay. Thank you.[32]

The jury returned a unanimous verdict of guilty approximately a half hour after the

---

[31] *Id.*, at 24.
[32] *Id.,* at 23-26.

6

instruction was given.[33] A poll of the jury confirmed the result.[34]

## III. THE PARTIES' CONTENTIONS

Wilson argues that the evidence was insufficient to support a verdict of guilty of Theft of $100,000 or more.[35] Specifically, she asserts that since the State did not introduce any documentation showing that the $288,608.07 in cash withdrawals were not used for legitimate trust purposes, the State was unable to establish that the theft exceeded the threshold of $100,000.[36] Wilson further argues that by treating the undocumented cash withdrawals as thefts, the State effectively improperly shifted the burden of proof to her to prove herself innocent.[37]

The State responds that it produced sufficient evidence, both direct and circumstantial, for a rational jury to determine that the amount of the theft exceeded $100,000.[38] First, it points to Wilson as the sole individual, who, by her own admission, withdrew all of the $1,004,833.21 listed as money withdrawn during the 22 months encompassed by the Guardian's First Accounting.[39] The State points out that it documented $36,823.51 in improper personal spending by Wilson, and argues that the remainder needed to exceed $100,000 was proved by circumstantial evidence, such as Wilson's transfer of trust funds to her own or

---

[33] *Id.,* at 26-27.
[34] *Id.,* at 28-29.
[35] D.I. 23, at ¶ 11.
[36] *Id.,* at ¶ 10.
[37] *Id.,* at ¶ 7.
[38] D.I. 25, at 2.
[39] *Id.,* at 2-3.

and her failure to document debits from the trust account as required by the trust agreement.[40] The State also disputes Wilson's contention that the burden of proof was improperly shifted to her to prove her innocence.[41]

Wilson argues in the alternative that she is entitled to a new trial because the jury's guilty verdict was an improper compromise verdict.[42] She claims that the juror or jurors who agreed with the statements in the note surrendered their conscientious convictions in order to avoid an additional day of deliberations on the following Monday.[43] Wilson further argues that the Court's failure to instruct the jury not to surrender their conscientious convictions when it answered the note contributed to the jury's compromise verdict.[44]

In response, the State contends that there was no "compromise."[45] Rather, Wilson is really arguing that the jurors were coerced into returning their verdict.[46] The State argues that any notion that jurors were coerced is speculation.[47] The State further argues that the Court's response to the note was proper and that no admonition to jurors not to surrender their conscientious convictions was necessary

---

[40] *Id.*, at 3-5.
[41] *Id.*, 5-6.
[42] D.I., at ¶ 18.
[43] *Id.*
[44] *Id.*
[45] D.I. 25, at 6.
[46] *Id.*
[47] *Id.*, at 7.

because the jury had not said they were at an impasse.[48]

## IV.    STANDARD OF REVIEW

Motions for judgment of acquittal are governed by Superior Court Criminal Rule 29.  In deciding whether to grant a motion for judgment of acquittal, this Court "must consider the evidence and all legitimately drawn inferences form the point of view most favorable to the state"[49] in order to determine "whether *any* rational trier of fact…could find [a] defendant guilty beyond a reasonable doubt."[50] "In making this determination, [t]the fact that most of the State's case [is] circumstantial is irrelevant; the Court does not distinguish between direct and circumstantial evidence."[51]

Motions for a new trial are governed by Superior Court Criminal 33.  A motion for a new trial may be granted "if required in the interest of justice."[52]

## V.    DISCUSSION

### A.    Motion For Judgment Of Acquittal.

**(1)    The Evidence Was Sufficient To Support A Verdict Of Guilty Of Theft Of $100,000 Or More.**

The State proved by documentary evidence that Wilson stole $36,823.51 from the special needs trust.  It did so by introducing into evidence bank records

---

[48] *Id.*
[49] *Vouras v. State*, 452 A.2d 1165, 1169 (Del. 1982).
[50] *Monroe v. State*, 652 A.2d 560, 563 (Del. 1995).
[51] *Id.*
[52] Super. Ct. Crim. R. 33.

9

and other items establishing that Wilson withdrew funds from the trust account by debit card and spent those funds on clearly personal expenses. In her motion, Wilson does not take issue with the sufficiency of the State's proof as to that amount. She does take issue with the notion that an additional $288,606.07 in withdrawals from the trust, for which the State did not provide similar documentation as to how it was spent, could constitute stolen funds.

The State's proof that this $288,606.51 was stolen from the trust is more circumstantial, but not insufficient for a reasonable jury to conclude that it was stolen. As noted, Wilson was required to account for "every penny" in her accounting to the Chancery Court. She failed to account for $288,606.51. The jury was entitled to conclude that her explanation that for that failure – that all of the documents supporting the expenditure of those funds were lost when her basement flooded – was unworthy of belief. The jury was entitled to conclude further that that her real purpose using terms like "debit" and "transfer to unknown account" in her accounting was to conceal or misrepresent how she illegally appropriated trust funds to her own personal use.

The State contends that it was reasonable for the jury to extrapolate from the fact that Wilson stole nearly $37,000 in six and one half months that she stole more than $100,000 over the entire 22-month period she served as trustee, during which time she made more than $400,000 in cash withdrawals and transfers to her own

10

personal account.[53] While that argument might have merit, the Court takes a somewhat different approach. After deducting legal fees and expenses, Wilson spent nearly $700,000 over 22 months. Over half of that amount - $361,796.05 - went to pay for major items such as a house, furniture and a vehicle. Of the remaining $325,429.58, the State was able to provide documentation for $36,823.51 in improper personal expenses, leaving a balance of $288,606.07 in unaccounted for expenditures. It was certainly reasonable for the jury to conclude, that a child Tirese's age, even a child with Tirese's disabilities, simply could not have generated anywhere approaching more than a quarter of a million dollars in legitimate expenses in a mere 22 months.

**(1)   The Burden Was Not Shifted To The Defendant To Prove Her Innocence.**

The jury was instructed that, "The burden of proof is upon the State to prove all of the facts necessary to establish each and every element of the crime beyond a reasonable doubt."[54] Nonetheless, Wilson argues that the fact that the State did not present documentary evidence of how the unaccounted for $288,606.07 was spent somehow improperly shifted the burden to her to prove her innocence. The Court views the absence of documentary proof as a weight of proof question, not a burden of proof question. If the jury believed that the proof of Wilson's intent to

---

[53] D.I. 25, at 4-5.
[54] Tr., April 22, 2016, at 9.

11

appropriate the money was lacking without documentation, it would have acquitted her. The fact that Wilson failed to carry her burden in the Chancery Court to document "every penny" of her expenses, while certainly indicative of her intent to appropriate funds from the trust account, in no way shifted the burden to her in the Superior Court to prove her innocence.

## B.    Motion For New Trial

### (1)    There Is No Reason To Believe That The Jury's Verdict Was An Improper Compromise Verdict.

Wilson claims she is entitled to a new trial because jurors, who were instructed that the trial would last approximately three days, improperly compromised their conscientious convictions when they returned a verdict late on the fourth day so as to avoid returning for a fifth day.[55] Wilson argues that this timing resulted in a compromise verdict where some jurors surrendered their conscientious convictions in order to avoid a fifth day of trial.[56] This argument fails for two reasons. First, there was no compromise verdict as that term is defined by the case cited by Wilson in her motion for a new trial, *Wilson v. State*,[57] A compromise verdict is one which "results from the surrender by some jurors of their conscientious convictions in return for some like surrender by others."[58]

---

[55] D.I., at ¶ 16.
[56] *Id.*
[57] 305 A.2d 312 (Del. 1973).
[58] *Id.*, at 317.

12

Here, there was but a single count in the indictment and the jury, at the request of counsel, was not given any lesser included offense options. There appears to be no trade-off of mutually surrendered conscientious convictions. Thus, any "surrender" would have been unilateral.

The second, and more substantial, reason this argument fails is because it is based entirely on speculation. There is simply nothing in the record to suggest that any juror was concerned about returning for a second day of deliberations on Monday. Furthermore, to the extent Wilson's real complaint is that the jury was coerced into returning its verdict, the Delaware Supreme Court has rejected claims of jury coercion where the circumstances were arguably far more "coercive" than were present here.[59]

**(b)     Since The Court Did Not Give An *Allen* Charge, It was Not Necessary To Instruct The Jurors Not To Surrender Their Conscientious Convictions.**

For the first time, Wilson argues in her motion for a new trial that the Court should have instructed the jurors not to surrender their conscientious convictions for the mere purpose of reaching a verdict when it answered the jury's note. She did not object when the Court answered the note at trial.[60] The note itself was unusual. It made three statements, all of which were consistent with a not guilty

---

[59] *See, Younger v. State,* 496 A.2d 546, 553 (Del. 1985), where the jury began deliberations at 2:26 p.m. on the day before Thanksgiving; and *Styler v. State,* 417 A.2d 948, 951 (Del. 1980), where the jury began deliberations around 4:15 p.m. on the day before Thanksgiving, declined an offer to recess around 5:45 p.m., and returned verdicts at 11:03 p.m.
[60] Tr., April 22, 2016, at 26.

13

verdict, but it was not a verdict.[61] The note also did not state how many of the jurors held to the sentiments expressed in the note, nor did it say that the jury had reached an impasse.[62] Because the note did not state that the jurors were at an impasse, the Court specifically told counsel that it was not proposing to give an *Allen* charge.[63] It was the Court's hope that the answer to the note would either generate a note telling the Court the jury was unable to agree or a verdict.[64] The Court remains convinced that, under the circumstances, the caution of the *Allen* charge was not required. It follows then that the interest of justice does not require that the Court order a new trial.

## VI. CONCLUSION

For the reasons set forth above, the Court finds that a rational trier of fact could find Wilson guilty of Theft of $100,000 or more beyond a reasonable doubt. Accordingly, the Motion for Judgment of Acquittal is **DENIED**.

The Court also finds that a new trial is not required in the interests of justice and, therefore, the Motion for New Trial is **DENIED**.

**IT IS SO ORDERED.**

_____
Ferris W. Wharton, J.

---

[61] *Id.*, at 22-23.
[62] *Id.*, at 22-24.
[63] *Id.*, at 23-24.
[64] *Id.*, at 24.

14